HEARD APRIL TERM, 1879.

CASE No. 741.

H. F. ADICKES, WILLIAM McGILL AND THOMAS McGILL v. J. T. LOWRY AND FENTON DIGGS.

1. Executions having an unexpired lien on November 25th, 1873, under the provisions of Section 314 of the code of procedure, then acquired, by virtue of the act of that date amending this section, an extended lien for ten years from the day the lien attached. *Arnold* v. *McKellar,* 9 *S. C.* 335.

2.  Judgments entered in courts of record since November 25th, 1873, constitute a lien upon the real estate of the judgment debtor in the county where the same are entered, for a period of ten years. 15 *Stat.* 498.
3.  A levy being made under an execution having active energy, the sheriff may sell at any time thereafter while the lien of the judgment remains.
4.  In an action to recover the possession of lands purchased under execution, the defendant, a purchaser from the judgment debtor, cannot object to the judgment, under which the sale was made, for insufficient service of original process upon the judgment debtor, particularly when such service was accepted by this defendant, subscribing himself as attorney in fact for the defendant in that cause.
5.  Land in the possession of a vendee under a contract *bona fide* to purchase, cannot be sold under judgments subsequently obtained against the vendor. *Massey* v. *McIlwaine,* 2 *Hill Ch.* 421, approved. But such defence, being equitable in its nature, should be decided by the judge, and not submitted to the jury for determination.

Before HUDSON, J., at York, March, 1878.

The plaintiffs purchased a tract of land at sheriff's sale as the property of J. R. Bratton; the defendant, Lowry, was in possession of this land, claiming it as his own, and Fenton Diggs was his tenant. This action was brought by the plaintiffs against the defendants to recover possession of the land and damages for its detention.

J. R. Bratton was a member of the firm of Allison & Bratton. Judgment in favor of Hugh Galloway was entered up on January 15th, 1871, against J. R. Bratton for $100.60, costs of a suit instituted by Bratton. No levy was endorsed upon the execution in this case. Judgment by default was entered up before the clerk of the court in May, 1872, for $354.36, in favor of Schieffelin & Co. against Allison & Bratton, personal service of the summons accepted by Allison signing the firm name. In July, 1873, separate judgments by default were entered up before the clerk against Allison & Bratton, in favor of Dowie, Moise & Davis, for $194.49, and L. M. Grist for 125.40, respectively. On the summons in the Dowie, Moise & Davis case appears this endorsement: "Personal service of a copy of within summons admitted, May 12th, 1873. (Signed) J. R. Bratton, per John T. Lowry, attorney in fact." In September, 1873, judgment by default before the clerk was obtained by McGill,

administrator, against Allison & Bratton, for $675.05, service of summons being accepted by Allison and also by " J. R. Bratton, per John T. Lowry, attorney in fact." The Dowie, Moise & Davis and Grist executions were properly levied upon the land in dispute, as the property of J. R. Bratton, on September 22d, 1873; and the Schieffelin & Co. and McGill executions were also levied November 5th, 1873; and on the day that these levies were made, certified copies of the executions and levies were filed with the clerk. In these four cases, the judgment recited that J. R. Bratton had been personally served with the summons. On sale-day in December, 1873, the land was sold under these levies, and bid off by J. T. Lowry, who was then in possession, for $1405. During the month Lowry paid to the sheriff $400, (which were applied to the Dowie, Moise & Davis and Grist executions, satisfying them in full,) but failing fully to comply, the land was advertised to be re-sold at his risk on sale-day in January, 1874. Meantime, an order of injunction at the suit of Mrs. Agnes B. Harris prevented the re-sale. This order was modified February 12th, 1874, restraining the re-sale until the assets of Allison & Bratton were exhausted. These partnership assets were exhausted in April, 1874. On February 11th, 1874, judgment was obtained by Mrs. Agnes B. Harris against J. R. Bratton, for $666.95. This judgment recited that the defendant appeared by attorney, answered and admitted the cause of action. Execution was lodged with the sheriff during the same month, but was never levied. H. F. Adickes obtained judgment by default for $663.70, against Allison & Bratton on February 14th, 1874, which recited that the summons and complaint were served personally on the defendants, and adjudged that the plaintiff recover of " said defendants," &c. Upon the summons was endorsed an acceptance by Allison alone. Execution was lodged but never levied. The land was re-sold by the sheriff in June, 1875, and bid off by the plaintiffs for $1000, who complied and received deed of conveyance. Before suit brought in any of these cases (except Galloway's), J. R. Bratton had left the state and remained away. No attachments were issued against his property, and there was no service by publication of summons.

The defendant claimed the property under deed from J. R. Bratton dated in 1874. He also claimed to have had previously a bond for titles, executed and delivered to him by J. R. Bratton in 1871, in the presence of two witnesses, which bond had been afterwards destroyed in a fire, which consumed his dwelling-house. He denied the validity of the sale, and the legality of all the judgments obtained since Bratton left the state.

The deed was offered in evidence. The witnesses resided out of the state, but proof was admitted under Section 30, Chapter CX., of General Statutes.

The plaintiffs requested the presiding judge to charge: 1. That any execution whose return-day had not expired at the date of injunction order, still kept its active energy during the existence of the injunction. 2. That the defendants had no right to attack, in this action, the judgments under which the sale was made, on the ground that J. R. Bratton was not personally served with the summons. 3. That even though said executions under which the land was sold were void, the sale would still be valid if there was another and valid execution and judgment to which the sale could be referred. 4. That if a levy were made before the return-day of an execution, a sale after return-day would not thereby be void. 5. That if from the testimony, the jury were satisfied that the deed made to J. T. Lowry was for the purpose of hindering, delaying and defrauding the creditors of J. R. Bratton, then that said deed was void. 6. That the re-sale was not affected by the active energy of the execution expiring after first sale. 7. That J. T. Lowry and his tenant were, in this action, estopped from denying that J. T. Lowry was duly authorized to accept service on the summonses against J. R. Bratton.

His Honor declined the third request, on the ground that it was not applicable to the present case. He refused the fourth request, saying that any sale after the one hundred and twenty days had elapsed, was void, even though the levy had been made prior to the return-day of the execution. He granted the fifth request to charge. Upon the remaining exceptions, his Honor held as follows: "That he had grave doubts whether there had been such service of process as would sustain the executions in

these cases against Bratton's individual property; that even were service good, the lien of the executions and the sheriff's power to sell under them expired one hundred and twenty days after the levy, or one hundred and twenty days after all prior encumbrances were removed; that more than one hundred and twenty days appeared to have elapsed after such removal of prior encumbrance affecting the executions last levied; that in the case of W. H. Schieffelin & Co., the execution was levied more than sixty days after it was issued, and the levy was void; and that none of the executions, in the judgment of the court, were effective process to authorize a sale of Bratton's individual property in June, 1875. He further held that these defendants were not estopped upon these questions, as it was incumbent upon any one claiming possession under a sheriff's title, upon an execution sale, to show the validity of the proceedings on which the executions issued. He charged the jury that if they believed that the defendant was in possession, under a bond for title, or contract of sale, at the time of the levy, which was afterwards converted into a fee simple title, that the land could not be taken in execution against Bratton, unless the transaction between Bratton and the defendant was for the purpose of hindering, delaying, or defrauding creditors; and of this they must be the judges."

To all of which charges (except the fifth) and refusals to charge, the plaintiffs excepted. The jury retired; and then brought in a verdict for defendants. The plaintiffs thereupon made a motion for a new trial, which motion was refused, and exception thereon taken. The defendants thereupon entered up judgment against the plaintiffs on      day of      , 1878, for the sum of      dollars, costs and disbursements.

From which judgment, charges, refusals to charge, and refusal to grant a new trial, the plaintiffs appealed to this court, and asked that the rulings of the presiding judge be reversed, and a new trial granted, on the ground that his Honor erred in refusing to charge—

1. That any execution whose return-day had not expired at the date of the injunction order, still kept its active energy during the existence of the injunction.

2. That the defendants had no right to attack, in this action,

the judgments under which the sale was made, on the ground that J. R. Bratton was not personally served with the summons.

3. That even though said executions, under which the land was sold, were void, the sale would still be valid if there was another and valid execution and judgment to which the sale could be referred.

4. That if a levy were made before the return-day of an execution, a sale after return-day would not thereby be void.

5. That the re-sale was not affected by the active energy of the executions expiring after the first sale.

6. That J. T. Lowry and his tenant were estopped in this action from denying that J. T. Lowry was duly authorized to accept service on the summonses against J. R. Bratton. And in charging—

7. That the right to sell under the executions depended upon the lien of the executions, and that said lien had expired before the second sale.

8. That the sheriff was without authority to re-sell the land at the time he did sell.

9. That if the defendant, Lowry, was holding the land at the time of the first sale, under a contract to purchase from Bratton, then that the land could not be sold as Bratton's property. And—

10. In refusing to grant a new trial.

11. Because his Honor erred, in his rulings, on the admissibility in evidence of the power of attorney, and the deed from Bratton to Lowry.

*Mr. J. S. R. Thomson,* for appellants.

1. The judgments express, upon their face, that the summons had been served personally upon J. R. Bratton. This recital cannot be controverted, except in proceedings instituted by the defendant in execution directly attacking the judgments. 3 *McC.* 346; 1 *N. & McC.* 408; *Harper* 463; *Freeman on Judg.,* §§ 130, 131; *Rorer on Jud. Sales,* § 468.

2. The power of attorney gave authority to Lowry to accept service of summons for J. R. Bratton. 1 *Wait Pr.* 50.

3. Defendants are estopped from denying that J. T. Lowry

was duly authorized to accept service of the summons in either of the actions. *Rorer on Jud. Sales,* §§ 445, 457, 656 ; 2 *Pars. on Cont.,* § 799 ; *Bigelow on Estoppel* 433, *and note; Story on Agency,* § 264.

4. His Honor should have charged " that even though the said executions under which the land was sold were void, the sale would still be valid, if there was another and valid execution and judgment to which the sale could be referred." 1 *McM.* 349 ; 2 *Spears* 91 ; 2 *Rich. Eq.* 4 ; 3 *Hill* 289 ; 11 *Johns.* 513 ; *Freem. on Ex.,* § 274.

5. If a levy was made before return-day, a sale after return-day would not thereby be void. 1 *Mill Const. R.* 325 ; 3 *Hill* 289.

*Mr. J. F. Hart,* for respondent.

As to the first exception, there was no execution which had an active energy. As to the second, any party may collaterally take advantage of void proceedings. 2 *Strob.* 208 ; 1 *Bail.* 611. Was the sale void ? Under the Galloway judgment there was no levy and no lien. A sale under it would have been void. 2 *Bail.* 361 ; 2 *Bay* 524. The executions of Grist and Dowie, Moise & Davis, were against Allison & Bratton, and Bratton not being served, his individual property could not be seized. *Code,* § 159, *Subd.* 1. There was no service by Lowry's acceptance, because—(1.) The power of attorney referred only to Bratton's individual estate ; (2.) It would have conflicted with act of 1785 ; 4 *Rich.* 267 ; 6 *Rich.* 487. (3.) It was in conflict with the code, which requires service to be personal. 13 *How. Pr.* 43 ; 5 *Ib.* 341 ; 14 *Ib.* 381 ; 16 *Ib.* 144 ; 1 *Wait Pr.* 511, 530, 531 ; (4.) There was no attachment taken out. 17 *How.* 106. The Schieffelin & Co. execution was not levied in time, and in the McGill case there was no service. The Harris and Adickes executions were not in existence in December, 1873, and their subsequent issue could not validate the sale. 3 *Rich.* 119 ; 10 *Rich.* 448. In June, 1875, when the land was re-sold, all liens had expired.

After the expiration of the lien the sale cannot be made. 1 *Mill Const. R.* 323. As to the re-sale : The act of 1839, (*Gen Stat.* 473,) must be strictly followed. 3 *Bay* 524 ; 2 *Brev.* 417 ; 3 *Strob.* 306 ; 1 *Bail.* 618.

The valid execution and judgment to which the sale could be referred, must be such as create a lien. 2 *Spears* 90. As to the sixth exception, there can be no estoppel if act is void. 1 *Bail.* 618.

As to the ninth ground of appeal, the Circuit judge is fully sustained by 2 *Hill Ch.* 428, and *Freem. on Judg.*, §§ 357, 363.

June 19th, 1879. The opinion of the court was delivered by

HASKELL, A. J. This is an action brought to recover certain lands, with damages for the detention thereof. The land was levied on as the property of J. R. Bratton, and sold by the sheriff on sale-day in December, 1873, under and by virtue of executions then in his office against the business firm of Allison & Bratton, of which J. R. Bratton was a member, and was bid in by J. T. Lowry, one of the respondents, who failed fully to comply with the terms of the sale, and received no title from the sheriff. It appears that Lowry was in possession at the time of the sale. The land was advertised by the sheriff for re-sale on the succeeding sale-day in January, 1874, but the sale was prevented by orders of the court restraining further proceedings against the property of J. R. Bratton until the assets of Allison & Bratton had been exhausted. It is further shown, in the case as made, that the assets of the firm were exhausted by sale in April, 1874, and that on sale-day in June, 1875, the land was re-sold by the sheriff " at the risk of the former purchaser, and bid off by the plaintiffs for $1000, which they paid," and that they received a title deed from the sheriff, on which title the appellants rely. The defence claims possession by J. T. Lowry under a deed from J. R. Bratton " prior to said sale," and further denies that there was " any valid sale by the sheriff," upon the grounds: 1. That the premises were the individual property of J. R. Bratton, and that he had never been served with process in the suits under which the land was sold; and second, that no valid levies had ever been made by the sheriff under the executions in his office, and that the sale by him was without authority of law. There was evidence to show that there was in the sheriff's office, prior to the first sale, an execution in the case of *Hugh Galloway* v. *J. R. Bratton*, judgment

bearing date January 15th, 1871, and that no levy was ever endorsed on said execution. That there were also in the sheriff's office, at the time of the first sale, executions issued upon judgments, of title and date as follows, viz.: *Schieffelin & Co.* v. *Allison & Bratton*, May 22d, 1872, execution issued and lodged same day; *Dowie, Moise & Davis* v. *Same*, July 28th, 1873; *L. M. Grist* v. *Same*, July 28th, 1873; *McGill et al., administrators,* v. *Same*, September 30th, 1873. Executions in the last three cases were issued and lodged in each on the same day that the judgment was entered up. It was also in proof that subsequently to the first sale, but prior to the re-sale, that is, on the 11th of February, 1874, and on the 14th of February, 1874, judgments were entered up, one in favor of *Agnes B. Harris* v. *J. R. Bratton et al.,* execution issued and lodged 14th of February, 1874, and another in favor of *H. F. Adickes* v. *Addison & Bratton.* And that levies were made on the said land by the sheriff, and certified copy of each levy and execution filed in the cases, and at the dates as follows, viz.: *L. M. Grist* v. *Allison & Bratton,* September 22d, 1873; *Dowie, Moise & Davis* v. *Same,* September 22d, 1873; *Schieffelin & Co.* v. *Same,* November 5th, 1873; *McGill and others* v. *Same,* November 5th, 1873. At the time when each of these four judgments was obtained a judgment did not of itself constitute a lien upon real estate. *Code,* § 313, *Gen. Stat.* 643. Such lien, however, might be created by a levy made by virtue of an execution issued to enforce the judgment, and by the filing of a certified copy of the execution, with proper certificate thereon, in the office of the register of mesne conveyance. *Code,* § 314. It is in proof that in the four cases last above-named such proceedings were properly had, and that in at least three of the cases the sixty days, within which the original executions were returnable, had not expired at the time the levy was made, and that as to one of them, the execution held by *McGill et al.* v. *Allison & Bratton,* the sixty days had not expired on November 25th, 1873, which date, it will be seen, has important bearing upon the point involved. It is plain from the statement thus presented that there was evidence to show that at the time of the sale, on sale-day in December, 1873, there were three executions in the sheriff's office which had been levied within

the time in which they were returnable, and that according to law (*Code*, § 314,) the lien attached to the land for one hundred and twenty days subsequent to the date of filing the proper certificates, and one hundred and twenty days after the removal of prior encumbrances. But on November 25th, 1873, an act entitled "An act to alter and amend the code of procedure, being Title V., Part III., of the General Statutes," (15 *Stat.* 495,) became law. See *Arnold* v. *McKellar*, 9 *S. C.* 335. By Section 14 of said act, it is provided that "final judgments hereafter (after November 25th, 1873,) entered in any court of record in this state, shall constitute a lien upon the real estate of the judgment debtor in the county where the same are entered, for a period of ten years." It is further provided that "where any judgment has been obtained and execution issued since the first day of March, A. D. 1870, and the said judgment or execution has now [November 25th, 1873,] a lien by reason of a levy in accordance with the provisions of the code of procedure, then the lien of such judgment or execution shall date from the day upon which it became a lien under said code of procedure," and, as to real estate, endures for ten years from that time. The leading purpose of Section 14 is to make a judgment a lien upon real estate for ten years from the time the judgment is entered up. As to cases, however, where judgments had come into existence between March 1st, 1870, and November 25th, 1873, and such judgments had not acquired a lien according to law, the mode by which lien may be acquired and the period from which the lien is to run are both provided for. But in cases where the judgment had acquired a lien under the code for a period limited by the one hundred and twenty days rule, the provision above cited does nothing more than fix the time from which the extended or ten-years lien shall run, and requires no summons or other proceedings to show cause why it should not become a lien, from the fact that the lien had already been acquired. Executions, also, under the act of 1873, (15 *Stat.* 495,) cease to be returnable within sixty days, and retain their active energy "until the regular term of the court from which they were sued, which shall follow next after the full completion of five years from its lodgment." It is thus obvious that three such judg-

ments as those above cited might have constituted a lien upon the land for ten years after the times at which they respectively acquired lien under the code of procedure. The two other judgments offered in evidence, viz., *Agnes B. Harris* v. *Bratton,* and *Adickes* v. *Allison & Bratton,* having been entered up subsequently to the adoption of the act of November 25th, 1873, would unquestionably constitute a lien upon the property. Thus, there being evidence of the existence of such judgments and executions, it was manifestly error to instruct the jury "that the right to sell under the executions depended upon the lien of the executions, and that said lien had expired before the second sale." The fact is that the whole trial was conducted upon the assumption, on all sides, that the act of 1873, above cited, was not of legal force, and that its provisions did not go into effect until the 8th of March, 1875, at which time they were re-enacted; but, as already said, this court held otherwise in *Arnold* v. *McKellar, supra.* The judgment lien fixed by the act of 1873 disposes of most of the questions of law contained in the exceptions of the charge of the judge, and it is unnecessary that they should be further considered.

There remain, therefore, only two questions to be disposed of.

1. Whether the defendants had any right to attack the judgments under which the sale was made, on the ground that J. R. Bratton, the judgment debtor, was not personally served with the summons. The defendants are, in no sense, parties to the judgment. The general doctrine is thus briefly stated: "Third persons may sometimes have a judgment vacated on the ground that it is collusive, or that the cause of action on which it is based was fictitious, but they are not allowed to take advantage of errors or irregularities of proceeding." *Freem. on Judg.,* § 91. In *Barkley* v. *Screven,* 1 *N. & McC.* 408, it was held that the purchaser of real estate at sheriff's sale could rest his title upon the judgment and execution. "The purchaser," says the court, "is not required to look into the regularity of the proceedings. The seal of the court is evidence enough for him. Nor can objections of this nature be made by third persons if the proceedings were clearly irregular." The same is held in *Guignard* v. *Glover,* *Harp.* 457, and in *Henry* v. *Ferguson,* 1 *Bail.* 512. The de-

fendant, Lowry, sets up for a defence that the service of summons on Bratton was accepted by Bratton, per J. F. Lowry, (the defendant,) and that he, the defendant, was not duly authorized to thus accept service. *Henry* v. *Ferguson* is exactly in point and is conclusive.' Admitting that Lowry had not full authority at the time he accepted the service, nevertheless Bratton has never objected, and, certainly, Lowry cannot, at law or in equity, avail himself of his own wrong. The defence is inadmissible, and should not have been allowed to stand.

2. Whether the judge erred in his instruction to the jury— "That if the defendant, Lowry, was holding the land at the time of the first sale under a contract to purchase from Bratton, then that the land could not be sold as Bratton's property." The judge further submitted to the jury to decide whether such sale to Lowry was "for the purpose of hindering, delaying or defrauding creditors." The law, as announced by the Circuit judge, is sustained by the case of *Massey* v. *McIlwain*, 2 *Hill Ch.* 421, which is a leading authority on the subject. It is proper, however, to remark that the conclusion reached on the point by the Circuit judge should be regarded in the light rather of a judgment than of an instruction to the jury. Such defence is equitable in its nature and belongs to that side of the court which exercises the chancery jurisdiction. Under the former practice such defence could not have been set up in the action at law to try the title and recover possession. The defendant would have been obliged to file his bill in equity to restrain proceedings at law, and to seek such other relief as in equity he might have a right to demand. Under the code of procedure all this may be effected by the pleadings in a single action, and new parties, if necessary, may be brought in ; but, at the trial, the legal and the equitable issues must be distinguished and decided by the court in the exercise of its distinct functions as a court of law and a court of equity, and only those should be determined by a jury which are properly triable by jury, while those which would formerly have been properly triable in equity must be determined by the judge in the exercise of his chancery power. In the latter class, when questions of fact are submitted to the jury, the purpose can only be to enlighten the understanding of the

judge by giving him the aid of a verdict, but the verdict is not binding, and may be totally disregarded by the judge in arriving at his final determination.

The question of the admissibility of certain deeds in evidence is rendered immaterial by the decision as to the lien of the judgments, and as to the right of the defendant to assail judgments to which he is not a party. The right of the sheriff to re-sell cannot be disputed after the lien of the judgments is admitted; and whether the re-sale could be at the risk of the former purchaser is not made a question.

Having thus disposed of the material questions raised, the case is remanded for a new trial, attention being called to the manner in which the equity portion of the case should be tried.

Motion granted.

WILLARD, C. J., and McIVER, A. J., concurred.